NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 78

No. 2018-110

| | |
|---|---|
| J & K Tile Company | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Wright & Morrissey, Inc. | January Term, 2019 |

Robert A. Mello, J.

Mark G. Hall of Paul Frank + Collins P.C., Burlington, for Plaintiff-Appellee/Cross-Appellant.

Michael B. Clapp, Middlebury, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.    **REIBER, C.J.**    This is a contractual dispute between J & K Tile Co., a subcontractor, and Wright & Morrissey, a general contractor. After a bench trial, the court issued a judgment and order on February 23, 2018, which held, among other things, that Wright & Morrissey owed J & K Tile Co. $42,000 plus interest under a Memorandum of Understanding (MOU) between the parties, and that Wright & Morrissey unlawfully withheld J & K Tile Co.'s retainage[1] check in violation of the Vermont Prompt Pay Act. Following this decision, on May 31, 2018, the court further held that each party was the prevailing party in a portion of the litigation and should be awarded attorney's fees regarding that portion. Wright & Morrissey appeals, and J & K Tile Co. cross-appeals. We affirm in part and reverse and remand in part.

---

[1] "Retainage" is "a percentage of a contract price retained from a contractor as assurance that subcontractors will be paid and that the job will be completed." Retainage, Merriam-Webster Online Dictionary, Merriam-Webster.com [https://perma.cc/M2SQ-WH4B].

¶ 2.    The general factual background is as follows.  The parties entered a contract for Texas-based J & K Tile Co. to install flooring for Wright & Morrissey's construction project in Vermont.  J & K Tile Co. began work, expecting to complete its job within two months.  Soon afterward, anticipating there might be general delays in construction, the parties agreed to an MOU providing that Wright & Morrissey would make additional payments to J & K Tile Co. if delays arose that were beyond J & K Tile Co.'s control.  The anticipated delay occurred, and J & K Tile Co. requested three payments under the MOU.   Wright & Morrissey denied two of these requests.  After construction was completed, Wright & Morrissey sent the subcontractor a retainage check as its final payment.

¶ 3.    Three disputes are raised in this appeal: (1) J & K Tile Co.'s claim that it is owed $42,000 under the MOU; (2) a dispute about the retainage check; and (3) a dispute about attorney's fees under the Prompt Pay Act.  We discuss each in turn and recount additional facts as needed.

## I.  Claim for $42,000

¶ 4.    The first dispute addresses whether Wright & Morrissey breached its contract by failing to pay J & K Tile Co. $42,000 under the MOU.

## A.  Facts

¶ 5.    The parties entered into a construction contract in December 2014; following discussions about anticipated delays, the parties agreed to an MOU in April 2015, outside the amendment process set forth in the contract.  The MOU provided that the general contractor would pay two additional costs.  One was the "cost for travel and downtime" if Wright & Morrissey suspended the project.  After Wright & Morrissey suspended the subcontractor's work and J & K Tile Co. returned to Texas, the subcontractor requested additional payment, pursuant to the MOU, for leaving and returning to the job site.  The general contractor approved this payment.

¶ 6.    The other was a daily additional cost, provided by the MOU as follows: "If J & K Tile is delayed beyond May 21, 2015 through no fault of its own, Wright & Morrissey agrees to pay not to exceed documented daily costs of $2,000.00 per day."  The subcontractor worked

2

twenty-one days past May 21, 2015, due to delays it did not cause. It documented that each day resulted in more than $2000 in labor and fixed costs. On September 23, 2015, the subcontractor requested a $42,000 payment based on the MOU for the twenty-one days that it worked past May 21. Wright & Morrissey denied the payment. J & K Tile Co. sued, alleging in its complaint that Wright & Morrissey had breached its contract by failing to approve the September 23 request. The complaint did not specifically identify the MOU, although it did identify the September 23 request, which in turn identified the MOU.

¶ 7.     In the litigation that ensued, both parties, as well as the trial court, acknowledged that J & K Tile Co.'s claim regarding the $42,000 was based on the MOU. However, the parties contested whether the MOU was part of the contract. Wright & Morrissey argued in its summary-judgment briefing that the MOU was not an amendment, and therefore not part of the contract; thus, when the subcontractor alleged in its complaint that Wright & Morrissey had breached the "contract," it had not alleged a breach of the MOU. J & K Tile Co. countered that the MOU was an amendment and also that it did not matter; in whatever way they characterized the document, Wright & Morrissey's actions constituted a breach of contract. Later, at trial, Wright & Morrisey's witness testified that the MOU was a "standalone understanding," rather than an "agreement" or an amendment to the contract.

¶ 8.     In J & K Tile Co.'s post-trial proposed findings of fact and conclusions of law, it adopted the view, raised by Wright & Morrissey's witness, that the MOU was a standalone document. It concluded that the MOU was an independently enforceable contract. Wright & Morrissey disagreed, stating in its proposed findings of fact and conclusions of law that the MOU was not a standalone contract and that the question was irrelevant because J & K Tile Co. never alleged breach of the MOU in its complaint. Wright & Morrissey then filed a motion for clarification requesting that the court rule the original complaint did not allege a breach of the MOU. J & K Tile Co. responded with motions to clarify and to amend the complaint, arguing that the original complaint sufficiently notified Wright & Morrissey of its claim, but, in the alternative,

3

asking the court to amend the complaint to conform to the evidence pursuant to Vermont Rule of Civil Procedure 15(b).

¶ 9.   In the trial court's February 23 judgment and order, it held that the MOU was an enforceable contract and granted J & K Tile Co.'s motion to amend.  It further determined that Wright & Morrissey breached the MOU by failing to pay J & K Tile Co. $2000 per day for twenty-one days, and it accordingly awarded the subcontractor $42,000 plus interest.

¶ 10.   On appeal, Wright & Morrissey challenges this judgment with three legal arguments: (1) the MOU is an "interpretive gloss" on the original contract, not an independent contract, and therefore the timing and waiver provisions of the original contract bar the claim; (2) the court erred in allowing J & K Tile Co. to amend the complaint to expressly cite the MOU as the basis for J & K Tile Co.'s claims; and (3) the $2000-per-day cost outlined in the MOU does not include labor costs.  We do not address the third argument because it was not raised below. State v. Ovitt, 2005 VT 74, ¶ 13, 178 Vt. 605, 878 A.2d 314 (mem.) ("An issue is not preserved for appeal unless a party raises it with specificity and clarity below, thereby ensuring that the trial court will have an opportunity to fully develop the relevant facts and to reach considered legal conclusions.").

### B.  Independent Contract

¶ 11.   First, we address Wright & Morrissey's argument that the MOU was not an independent contract, and therefore the timing and waiver provisions of the original contract bar the $42,000 claim.  The question is whether the MOU is an amendment, an independent contract, or some other category of agreement.  "[T]he existence of an agreement is ordinarily a question of fact," but the "legal interpretation" of an agreement—such as whether it constitutes an enforceable contract—is a question of law.  Kellogg v. Shushereba, 2013 VT 76, ¶ 17, 194 Vt. 446, 82 A.3d 1121 (quotation omitted).  "We review questions of law de novo without deference to the trial court."  Doe v. Vt. Office of Health Access, 2012 VT 15A, ¶ 12, 191 Vt. 517, 54 A.3d 474; see also Kellogg, 2013 VT 76, ¶ 17 (reviewing de novo whether agreement constituted rental

agreement as matter of law); Prue v. Royer, 2013 VT 12, ¶ 18, 193 Vt. 267, 67 A.3d 895 ("Our review of the trial court's interpretation of the parties' agreement is nondeferential."). Insofar as this issue requires review of the court's factual findings, we review for clear error. Quenneville v. Buttolph, 2003 VT 82, ¶ 11, 175 Vt. 444, 833 A.2d 1263. "We will overturn a factual finding of the trial court only where there is no credible evidence to support it . . . ." Id. ¶ 17.

¶ 12. To be an enforceable contract, the agreement must manifest the parties' intention to be bound and its terms must be sufficiently definite. Miller v. Flegenheimer, 2016 VT 125, ¶ 13, 203 Vt. 620, 161 A.3d 524 (addressing whether exchange of emails constituted enforceable contract). Intent is "a question of fact to be determined by examining the objective words and deeds of the parties." Quenneville, 2003 VT 82, ¶ 17 (addressing whether oral agreement constituted enforceable contract). Partial performance of the contract can indicate intent to be bound. Miller, 2016 VT 125, ¶ 17. As for the terms, "a binding agreement need not contain each and every contractual term," but "it must contain all of the material and essential terms." Quenneville, 2003 VT 82, ¶ 16; see also Miller, 2016 VT 125, ¶ 17 (stating that "whether all of the terms of the alleged contract have been agreed upon" can indicate whether parties intended to be bound (quotation omitted)). The agreement must leave no "material term . . . left for future negotiations." Miller, 2016 VT 125, ¶ 21 (quotation omitted).

¶ 13. The trial court here found that the parties intended to be bound by the MOU, and the record supports that finding. The parties reduced to writing an oral agreement to manage delays, and at no time did either party express an intent not to be bound. Additionally, Wright & Morrissey partially performed the MOU by authorizing a payment for the removal and return of J & K Tile Co.'s workers, which was also provided by the MOU; this demonstrates its intent to be bound. See id. ¶ 17. Furthermore, as the trial court found, the MOU "contains all the terms needed for a complete understanding of the parties' rights and obligations in the event of a suspension, and those terms are clear and definite." Given these facts, the court did not err in concluding that the MOU is an enforceable contract. Nor did the court err in finding that the MOU was not an

amendment to the original contract, given that the parties did not follow the amendment process set forth in the contract when adopting the MOU.

¶ 14. Because the MOU is an independent contract, the timing and waiver provisions of the original contract do not apply to the MOU.[2]  J & K Tile Co.'s breach-of-contract claim was not barred by the original contract or by the MOU.

C.  Amendment of Complaint

¶ 15. Next we address Wright & Morrissey's argument that the trial court erred in allowing an amendment to the complaint.  "We review a trial court's decision to grant a motion to amend the complaint for abuse of discretion."  Shahi v. Madden, 2008 VT 25, ¶ 6, 183 Vt. 320, 949 A.2d 1022.

¶ 16. Wright & Morrissey's core argument is that it lacked notice of J & K Tile Co.'s claim as amended, and therefore it lacked an opportunity to defend against that claim.  The amendment in this case was granted pursuant to Vermont Rule of Civil Procedure 15(b).  That rule provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."  V.R.C.P. 15(b).  The rule further provides that "[s]uch amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment."  V.R.C.P. 15(b).  Additionally:

> If evidence is objected to at trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party . . . .

V.R.C.P. 15(b).

---

[2]  Wright & Morrissey claims it was "severely prejudiced" by J & K Tile Co.'s failure to comply with the timing and waiver provisions of the original contract.  Because those provisions do not apply to the MOU, that argument is irrelevant.

6

¶ 17. Thus, Rule 15(b) addresses two circumstances in which a party may request an amendment: (1) when the parties have explicitly or impliedly consented to trial of an issue that was not raised in the pleadings and (2) when one party has objected at trial to the introduction of evidence because the issue to which the evidence is relevant was not raised in the pleadings. In both circumstances, as with all amendments, the essential question is whether the amendment will prejudice the objecting party. See Bevins v. King, 143 Vt. 252, 254, 465 A.2d 282, 283 (1983) ("Both the Vermont rules of civil procedure and the common law tradition of this state encourage liberality in allowing amendments to pleadings where there is no prejudice to the other party."); see also Minter v. Prime Equip. Co., 451 F.3d 1196, 1207-08 (10th Cir. 2006) (holding substantially similar Federal Rule of Civil Procedure 15 "was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result" and explaining that "[c]ourts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment," such as "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues" (quotations omitted)).

¶ 18. Before addressing whether the court erred in amending the complaint here, we clarify that the claim, as amended, has two parts: (1) Wright & Morrissey breached the MOU by failing to pay J & K Tile Co. the amount requested in the September 23 letter, and (2) the MOU was a separate contract. There is no question that Wright & Morrissey received notice regarding the claimed breach. The original complaint was itself sufficient for that purpose. Although it did not specifically identify the MOU, it did identify the September 23 letter, and the letter identified the MOU. This satisfies our liberal notice-pleading standard. Mahoney v. Tara, LLC, 2011 VT 3, ¶ 12, 189 Vt. 557, 15 A.3d 122 (mem.) ("The key to whether a complaint is sufficient is notice; the complaint must provide a statement clear enough to give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." (quotation omitted)); see also V.R.C.P. 8(a)

7

(requiring complaint to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief").

¶ 19. The second part of the amended claim—that Wright & Morrissey breached the MOU <u>as a standalone contract</u>—is more complicated. J & K Tile Co. did not assert this theory in its original complaint, in the summary-judgment phase of proceedings, or during trial. The subcontractor adopted this view after trial in its proposed findings of fact and conclusions of law. However, the MOU's status was a contested issue that "permeated" the proceedings. See <u>LeClair v. LeClair</u>, 2017 VT 34, ¶ 30, 204 Vt. 422, 169 A.3d 743 (holding that issue raised in amendment "permeated the case from the start," indicating that amendment was appropriate (quotation and brackets omitted)). The parties engaged in an extended discussion about the MOU's status during the summary-judgment phase. Significantly, Wright & Morrissey prompted this discussion by asserting that the MOU was not part of the contract. Then at trial, the general contractor's witness testified that the MOU was a "standalone understanding," not an amendment to the contract or an "agreement."

¶ 20. The parties' extensive mutual engagement regarding the MOU's status indicates the issued was "tried by . . . implied consent of the parties." V.R.C.P. 15(b). We rely on <u>LeClair v. LeClair</u> in coming to this conclusion. 2017 VT 34. In <u>LeClair</u>, we decided that an amendment to conform to the evidence was proper because the party opposing the amendment had raised the issue and discussed it at length in its summary-judgment briefing. <u>Id</u>. ¶¶ 33-35. We cited two federal court cases that had found the parties had impliedly consented to trial of the amended claims because they had "squarely address[ed]" the contested claims in their summary-judgment briefing. <u>Id</u>. ¶ 33 (quotation omitted) (citing <u>Handzlik v. United States</u>, 93 F. App'x. 15, 17 (5th Cir. 2004), and <u>Whitaker v. T.J. Snow Co.</u>, 151 F.3d 661, 663 (7th Cir. 1998)). We held that "when an issue enters a case during the summary judgment phase in part through the party later opposing its consideration, . . . the issue is effectively being tried based on the implied consent of the parties." <u>Id</u>. ¶ 35. "[T]hus a contemporaneous motion to amend a pleading to include that

8

issue should be freely granted." Id. The motion to amend came after trial in this case, unlike in LeClair, but the situation here is similar. The parties in this case extensively addressed the MOU's status in summary-judgment proceedings and at trial. The party now opposing amendment raised the issue and introduced evidence to establish that the MOU was a standalone document.

¶ 21. Furthermore, Wright & Morrissey cannot credibly claim prejudice. In fact, urging the court to view the MOU as a standalone document appears to have been central to the general contractor's defense strategy throughout litigation. Wright & Morrissey argued that J & K Tile Co. alleged a breach of the contract, rather than a breach of the MOU, and contended that the MOU was not part of the contract; in doing so, the general contractor apparently attempted to sidestep defending against J & K Tile Co.'s core claim by denying that the subcontractor had raised the claim at all. Given these circumstances, Wright & Morrissey did not lack notice or an opportunity to defend. It simply chose a defense strategy that did not prevail. It was within the trial court's discretion to grant leave to amend the complaint to conform to the evidence here.

¶ 22. To be sure, as Wright & Morrissey points out, it never argued that the MOU was a standalone contract, just that it was a standalone document. But the distinction is too fine. Having contended that the MOU was not part of the contract, it cannot now claim it lacked notice and an opportunity to defend against the claim that the MOU was a contract on its own. "A claim of surprise that is not borne out by the facts or an objection to a mere technical addition to the theory of the claim for relief is not sufficient to avert a motion to amend." Commonwealth Land Title Ins. Co. v. IDC Props., Inc., 524 F. Supp. 2d 155, 165-66 (D.R.I. 2007) (quotation omitted) (explaining "prejudice" in context of Federal Rule of Civil Procedure 15); see also Minter, 451 F.3d at 1211 (deciding that any harm party experienced was caused by its own litigation strategy, and therefore was not prejudice, and noting that Federal Rules of Civil Procedure "are designed to put an end to the 'sporting theory of justice,' " and instead "facilitate a proper decision on the merits" (quotations omitted)).

9

¶ 23. In conclusion, we hold the court did not err in finding that the MOU was a standalone contract. Nor did it err in allowing an amendment to the complaint to conform to the evidence. Wright & Morrissey breached its contract with J & K Tile Co. by failing to pay the requested $42,000, as provided under the MOU.[3]

## II. Dispute Regarding Retainage Check

¶ 24. The parties' second dispute addresses whether Wright & Morrissey unlawfully withheld a retainage payment owed to J & K Tile Co. Under Vermont's Prompt Pay Act, a contractor must pay a subcontractor the retainage it is owed within seven days after the contractor receives its retainage from the owner of the project. 9 V.S.A. § 4005(c). The facts underlying this dispute are as follows.

### A. Facts

¶ 25. In August 2015, Wright & Morrissey notified J & K Tile Co. that it had its retainage check ready and would send it after receiving a signed "final waiver" form from the subcontractor. This request for a waiver was consistent with the parties' contract, which provided that before the final payment was issued, the general contractor could require evidence from the subcontractor that "all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied." J & K Tile Co. replied that it could not sign the form because it was waiting to receive additional payment associated with the delay.

---

[3] Wright & Morrissey claims that in granting leave to amend, the court violated its due process rights under the Fourteenth Amendment to the U.S. Constitution and Article IV of the Vermont Constitution by denying it the opportunity to respond to the subcontractor's "new theory." For the reasons we have stated, we disagree that the amendment denied the general contractor the opportunity to respond to the amended claim, and we hold there was no constitutional violation.

Wright & Morrissey also asserts, without explanation, that if we hold it breached the MOU, we must remand to the trial court to determine what damages J & K Tile Co. may be owed for that breach. Considering that the trial court fully considered the issue of damages for the breach of the MOU, and Wright & Morrissey provides no explanation for why remand would be necessary, we dismiss that argument as without merit.

¶ 26.    The subcontractor later requested the $42,000, which Wright & Morrissey refused to pay in a letter on October 7, 2015.  In the same letter as its refusal, the general contractor said it would release the retainage payment "which was pending receipt of a Waiver of Lien.  This payment represents payment in full of your current [contract] amount . . . ."  The next week, on October 14, 2015, Wright & Morrissey sent J & K Tile Co. the retainage check, even though the subcontractor had not signed the Waiver of Lien.

¶ 27.    J & K Tile Co. did not cash the retainage check.  Instead, the subcontractor sent Wright & Morrissey a letter in November 2015 indicating that they were "reluctant to . . . cash the check before there is acknowledgement by Wright & Morrissey that the act of cashing the check is not considered by [the general contractor] to be a waiver or an accord and satisfaction of the dispute" regarding unpaid funds.  Wright & Morrissey did not reply.  Two months later, J & K Tile Co. sent a letter to the general contractor saying that it considered Wright & Morrissey's "refusal to allow the check to be cashed to be a wrongful withholding" under the Prompt Pay Act.  In a letter dated January 27, 2016, the general contractor responded, "Execution of the Waiver and subsequent cashing of the check will not affect your ability to initiate and prosecute your claim against Wright & Morrissey."  J & K Tile Co. cashed the retainage check in May 2016.

¶ 28.    The trial court found that Wright & Morrissey violated the Prompt Pay Act on October 7 "when it insisted that cashing the retainage check would constitute an accord and satisfaction."  It further found that the general contractor cured the violation in its January 27 letter, which agreed that J & K Tile Co. could cash the check without waiving its claims.  Therefore, the court concluded, Wright & Morrissey wrongfully withheld the retainage check for three-and-two-thirds months.  Pursuant to 9 V.S.A. § 4003(d), it awarded J & K Tile Co. interest of one percent per month of the retainage for that period of time.

¶ 29.    On appeal, Wright & Morrissey maintains that it did not prevent J & K Tile Co. from cashing the check.  It delivered the check to the subcontractor, who could have cashed it at any time.  "In reviewing the court's decision, we will uphold its factual findings unless they are

clearly erroneous." Sweet v. St. Pierre, 2018 VT 122, ¶ 10, __ Vt.__, 201 A.3d 978. "[W]e will affirm its legal conclusions if they are supported by the findings." Id.

## B. Analysis

¶ 30. The issue here is whether Wright & Morrissey's October 2015 letter indicated that it would consider cashing the retainage check to be an accord and satisfaction, such that J & K Tile Co. would risk relinquishing its claims for further payment if it cashed the check. "Accord and satisfaction" refers to "[a]n agreement to substitute for an existing debt some alternative form of discharging that debt, coupled with the actual discharge of the debt by the substituted performance." Accord and satisfaction, Black's Law Dictionary (11th ed. 2019). To prove there was an accord and satisfaction, and therefore that the "claim is discharged," the party must show that it "in good faith tendered an instrument to the claimant as full satisfaction of the claim"; "the amount of the claim was unliquidated or subject to a bona fide dispute"; "the claimant obtained payment of the instrument"; and "the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." 9A V.S.A. § 3–311(a)-(b); see also Alpine Haven Prop. Owners Ass'n, v. Deptula, 2003 VT 51, ¶ 19, 175 Vt. 559, 830 A.2d 78 (explaining § 3–311 is, "[a]t least in part . . . , intended to codify the common law of accord and satisfaction"). As an example, "a person against whom the claim is asserted may attempt an accord and satisfaction of the disputed claim by tendering a check to the claimant for some amount less than the full amount claimed by the claimant," with "[a] statement . . . included . . . to the effect that the check is offered as full payment." Official Comment 1, 9A V.S.A. § 3–311; see also 9A V.S.A. § 3–104(a)-(b), (f) (including check in definition of "instrument").

¶ 31. Wright & Morrissey communicated to J & K Tile Co. that the check was a "payment in full" on the contract, and there was a dispute regarding the amount Wright & Morrissey owed to J & K Tile Co. In that circumstance, the subcontractor's cashing the check could be construed as an accord and satisfaction on the contract. The subcontractor could not cash the check until

12

Wright & Morrissey acknowledged that the subcontractor could still pursue its claims. Therefore, Wright & Morrissey wrongfully withheld the retainage check in violation of the Prompt Pay Act between October 7, 2015, and January 27, 2016. The trial court did not err.

### III. Dispute Regarding Attorney's Fees

¶ 32. The parties' third dispute concerns attorney's fees. Following the trial court's February 23 judgment, each party filed motions requesting attorney's fees pursuant to the Prompt Pay Act. In response to these motions, the court ruled on May 31 that each party was entitled to a payment of attorney's fees, with a net payment to J & K Tile Co.

¶ 33. The court reasoned that the case involved "three distinct groups or categories of claims and defenses" arising out of three distinct sets of facts. The first group involved J & K Tile Co.'s claims about additional money to which it was entitled under the MOU—the $42,000 and an additional payment for returning to the job site. For that group, the court held that the subcontractor was the substantially prevailing party. The second group involved the retainage claim. For that group, the court held that neither was the substantially prevailing party because Wright & Morrissey had violated the Prompt Pay Act, as J & K Tile Co. had alleged, but it had cured the violation prior to the start of litigation. Thus, the court awarded neither party attorney's fees on that claim. The third group involved a claim that Wright & Morrissey had breached its contract by refusing to mediate their dispute. The trial court disposed of this claim prior to trial, awarding summary judgment in favor of the general contractor. It found in its May 31 order that Wright & Morrissey was the substantially prevailing party regarding that claim.

¶ 34. Wright & Morrissey appeals and J & K Tile Co. cross-appeals, each arguing that it was the substantially prevailing party. "We review the trial court's ruling on the amount of attorney's fees awarded for abuse of discretion." The Elec. Man, Inc. v. Charos, 2006 VT 16, ¶ 6, 179 Vt. 351, 895 A.2d 193; see also Sweet, 2018 VT 122, ¶ 20 ("[T]he determination of whether any party substantially prevailed is a matter within the trial court's discretion . . . ."). Insofar as

13

the court's decision rests on a question of law, our review is without deference. Doe, 2012 VT 15A, ¶ 12.

¶ 35. Under the Prompt Pay Act, "the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter shall be awarded reasonable attorney's fees in an amount to be determined by the court or arbitrator, together with expenses." 9 V.S.A. § 4007(c). In construing this provision, we have said that "in most construction cases that include [Prompt Pay Act] claims, courts typically determine the substantially prevailing party, if any, and the award of fees with reference to the broader range of claims at issue in the case rather than simply focusing exclusively on the [Prompt Pay Act] claim." Nystrom v. Hafford, 2012 VT 60, ¶ 19, 192 Vt. 300, 59 A.3d 736. We have held that "a fee award should not be apportioned among claims that arise from a common core of facts." Id. ¶ 24.

¶ 36. The matter here hinges on what constitutes a "common core of facts." The Electric Man, Inc. v. Charos is instructive. 2006 VT 16. In that case, a contractor brought several claims against a homeowner, all based on one factual situation. A jury ruled in favor of the contractor on each claim. The contractor then filed for attorney's fees under the Prompt Pay Act. The court awarded attorney's fees for the part of the litigation that centered on one claim (wrongfully withheld payment), but not others (breach of contract or conversion). The contractor appealed. This Court compared the Electric Man facts with cases in which a plaintiff prevailed on some claims but not others, or in which only some of the claims were brought under an act that permitted attorney's fees. Id. ¶ 9. We reasoned:

> [T]he claims at issue share a common core of facts and multiple theories of recovery. Virtually all of the evidence is relevant to all of the claims. The lawsuit cannot be viewed as a series of discrete claims. Apportioning the fee award based on the recovery of each claim was an abuse of the trial court's discretion.

Id. ¶ 10 (quotation omitted). According to our reasoning in Electric Man, when multiple claims are predicated on the same factual situation, we generally will consider them as arising from a "common core of facts"—even if not every fact is relevant to every claim.

14

¶ 37.    The situation here is like that in <u>Electric Man</u>.  All the claims arise out of the same factual situation.  Although not all of the evidence is relevant to all the claims, all the evidence, and all the theories of liability, relate to the same common core of facts.  Additionally, in this case J & K Tile Co. itself treated the claims as arising from a common core of facts, as evidenced by their combining the failure-to-mediate and breach-of-contract allegations into a single count.  The court should have determined who was the substantially prevailing party as a whole, considering all the claims together.  Accordingly, we reverse the order regarding attorney's fees and remand the matter to the trial court.

The trial court's May 31, 2018 order regarding attorney's fees is reversed and remanded for proceedings consistent with this opinion.  Its February 23, 2018 judgment and order is affirmed.

FOR THE COURT:

_____
Chief Justice

¶ 38.    **ROBINSON, J., concurring in part, dissenting in part.**  I join in paragraphs 1-31 of the majority opinion, but write separately to dissent with respect to the attorney's fee analysis.  I believe the majority has extended the "common core of facts" doctrine beyond its purpose and limitations, and has failed to defer to the trial court's superior vantage point in evaluating the relationships among the parties' various claims and counterclaims.

¶ 39.    The "common core of facts" gloss on the Prompt Pay Act (PPA) reflects a recognition that in many cases the evidence, preparation, and arguments underlying non-PPA claims are so entwined with the PPA evidence, preparation, and argument that it would be contrary to the purposes of the PPA to attempt to disentangle the attorney's fees associated with the respective claims.  But it is not without limitations, and we have never said that parties that prevail on a PPA claim are entitled to all reasonable attorney's fees incurred in the associated lawsuit.  In

15

this case, it was well within the trial court's discretion to conclude that the failure-to-mediate claim was entirely distinct factually and legally from the PPA and related claims.

¶ 40. In The Electric Man, Inc. v. Charos, 2006 VT 16, 179 Vt. 351, 895 A.2d 193, we considered a fee award where a property owner sued a contractor for damages for breach of contract and defective construction, and the contractor counterclaimed against the owner for breach of contract, unjust enrichment, conversion, and violation of Vermont's Prompt Pay Act. The contractor prevailed on all claims, and the trial court awarded attorney's fees to the contractor in proportion to the amount of the overall judgment arising from the PPA claim. This Court reversed, concluding that the contractor was entitled to attorney's fees associated with all of his claims. We noted that some cases cannot be viewed "as a series of discrete claims so that the hours expended can be divided on a claim-by-claim basis." Id. ¶ 9 (quoting L'Esperance v. Benware, 2003 VT 43, ¶ 24, 175 Vt. 292, 830 A.2d 675). In reaffirming that principle, we relied in part on the United States Supreme Court's recognition that in some cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Elec. Man, 2006 Vt. 16, ¶ 9 (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)). We concluded that in Electric Man, "the claims at issue share a common core of facts and multiple theories of recovery. Virtually all of the evidence is relevant to all of the claims. The lawsuit cannot 'be viewed as a series of discrete claims.' " Id. ¶ 10 (quoting L'Esperance, 2003 VT 43, ¶ 24).

¶ 41. We explained the practical and policy reasons to apply the PPA fee-shifting provision relatively broadly:

> A claim of failure to pay will virtually always be met with some defense that reflects a breakdown in the working relationship between the owner and the contractor—for example, as here, a defense of breach of contract or defective workmanship. In fact, the prompt payment act specifically contemplates owners withholding payments in good faith on grounds such as "unsatisfactory job progress, defective construction, disputed work or third-party claims." It will always be possible to use different labels and theories to describe claims and defenses. The purpose of the prompt

16

payment act is to provide protection against nonpayment to contractors and subcontractors. If the statute's attorney's-fees authorization is read narrowly, as the trial court read it here, contractors and subcontractors will not be able to recoup collection costs even when they are found to have fully complied with their contractual obligations. Similarly, owners who demonstrate that they should not have to pay a contractor's bill because of nonperformance or poor-quality work may end up, through a narrow reading of the attorney's fee provision, paying attorney's fees that exceed the amount of their nonpayment.

Elec. Man, 2006 Vt. 16, ¶ 12 (citations omitted) (quoting 9 V.S.A. § 4007(a)). See also Post & Beam Equities Grp., LLC, 2015 VT 60, ¶ 48, 199 Vt. 313, 124 A.3d 454 (noting that "it is frequently impossible to parse out, claim-by-claim, legal services rendered in cases involving a common core of facts" (quotation omitted)).

¶ 42. Consistent with its rationale and purpose, the "common core of facts" analysis does not extend the reach of a fee-shifting statute to fees associated with a claim that is entirely distinct from the claim subject to fee shifting. That wouldn't make sense—where the same discovery requests, depositions, motions, witness development, and other litigation measures don't underlie both the fee-shifting claim and a distinct claim, it would not advance the goals of the fee-shifting statute to extend its remedy to an unrelated claim not supported by a common core of facts. Thus, we have affirmed attorney's fee awards where the trial court concluded that the various claims at issue "covered distinct evidentiary and legal ground, and lacked a common core of facts." Kneebinding v. Howell, 2018 VT 101, ¶ 122, __ Vt. __, 201 A.3d 326. In Kneebinding, we affirmed the trial court's application of the "common core of facts" analysis in the context of a contractual fee-shifting provision where several distinct clusters of legal claims revolved around distinct constellations of facts. Id.

¶ 43. In this case, the trial court was well within its discretion in concluding that the breach of contract claim relating to an alleged failure to mediate did not share a common core of facts with the PPA claim. We review the trial court's determination as to the presence and scope of a "common core of facts" for abuse of discretion. Elec. Man, 2006 VT 16, ¶ 17.

17

¶ 44. The trial court concluded here that J & K Tile Co.'s claim that Wright & Morrissey had breached the parties' agreement by allegedly refusing to mediate, and Wright & Morrissey's counterclaim contending that J & K Tile Co. had no good-faith basis for asserting such a claim, arose out of an entirely different set of facts from the other claims in this case. The record reflects that the failure-to-mediate claim rests on three factual allegations in J & K Tile Co.'s complaint that have no bearing on any of the other claims in J & K Tile Co.'s complaint: that the contract required mediation before suit; that J & K Tile Co. sought to invoke this provision; and that Wright & Morrissey never responded. The evidence upon which the superior court based its summary judgment ruling consisted of several exhibits that disproved these contentions—correspondence back and forth between the parties, and one affidavit submitted for summary judgment purposes. The discussion about mediation in these letters was independent of the parties' dispute concerning the sums due to J & K Tile Co. under the contract. Under these circumstances, I cannot agree that the trial court, which was more deeply immersed in the twists and turns of this lawsuit, abused its discretion in concluding that the failure-to-mediate claim did not rest on a common core of facts.[4]

¶ 45. I am authorized to state that Justice Carroll joins in this concurrence and dissent.

_____
Associate Justice

_____

[4] I do not suggest that the trial court was compelled as a matter of law to reach this conclusion. This is not a case in which the discovery, briefing, legal research, or evidence-gathering associated with a claim overlaps in a meaningful way with the PPA claim that is subject to fee-shifting. On the other hand, some correspondence relevant to the failure-to-mediate claim also includes content related to other contractual issues, and, as the majority notes, J & K's complaint itself combines the failure-to-mediate claim into a single count with the breach-of-contract claim relating to Wright & Miller's failure to accept the change order and pay J & K for its work. On this record, an order concluding that the mediation-related claim did arise from a common core of facts with the PPA claim here may also be within the trial court's discretion. But where the trial court made a reasoned determination based on a broader view of the litigation and the relationship between the various clusters of claims, I would not second-guess the trial court's exercise of discretion based on the way J & K pled the failure-to-mediate claim.