Filed 02/05/24

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 22-CV-03875

| Christopher Kramer v. Board of Education |
| --- |

Opinion and Order on Cross-Motions for Summary Judgment

In response to Plaintiff Christopher Kramer's request for public records, Defendant the Vermont State Board of Education has withheld a subset of responsive records that it contends are subject to attorney–client privilege and, thus, exempt from production under Exemption 4 (1 V.S.A. § 317(c)(4)) of the Public Records Act (PRA), 1 V.S.A. §§ 315–320). The parties have filed cross-motions for summary judgment addressing the question of privilege. In his motion, Mr. Kramer also argues that he is entitled to his legal fees in this case because, after he filed the complaint, the Board voluntarily produced some records that it had not produced earlier. The Court makes the following determinations.

Summary judgment procedure is "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c)(1), shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to

make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial). The Court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 210 Vt. 375, 380. Where, as here, there are cross-motions for summary judgment, the parties opposing summary judgment "are entitled to the benefit of all reasonable doubts and inferences." *Montgomery v. Devoid*, 2006 VT 127, ¶ 9, 181 Vt. 154, 156.

## I. Timeliness of Mr. Kramer's Motion for Summary Judgment

The Board objects to the untimeliness of Mr. Kramer's motion for summary judgment and requests that it be denied for that reason. Mr. Kramer has not attempted to justify his noncompliance with the filing deadline and has not provided any reason why the requested relief should not be granted.

According to the original February 2023 scheduling order, pretrial motions were to be filed no later than May 19, 2023. On May 18, the Court extended that deadline to June 9. The Board then filed its motion for summary judgment. The Court then granted three extensions for Mr. Kramer to file any opposition to the Board's motion. None of those requests or extensions included any mention of extending the time for Mr. Kramer to file his own motion for summary judgment. His July 10 request states that "the Court should extend the time for Plaintiff to oppose Defendant's motion for summary judgment

by 60 days." His September 8 request states that "the Court should extend the time for Plaintiff to oppose Defendant's motion for summary judgment to October 1." And his October 2 request states that "the Court should extend the time for Plaintiff to oppose Defendant's motion for summary judgment to October 6." On October 6, Mr. Kramer filed his opposition to the Board's summary judgment motion. Along with it, he filed his own motion for summary judgment.

Mr. Kramer's cross-motion is long out of time under the scheduling order, and he has come forward with no explanation for the delay. Ordinarily, the Court would deny the motion for that reason alone. *See* Vt. R. Civ. P. 16.2 ("When a party fails to obey a scheduling order, the court may impose the sanctions provided in Rule 37(b)(2)(B) or (C) or, if the failure is to appear for trial as directed, dismiss the action or enter a default."); *Carpenter v. Cent. Vermont Med. Ctr.*, 170 Vt. 565, 568–569 (1999) (trial court did not abuse discretion by enforcing the scheduling order).

In this case, however, denying Mr. Kramer's cross-motion on that basis would be counterproductive, and the Court declines to do so. Mr. Kramer's cross-motion presents two matters: (1) whether the records were properly withheld as privileged, and (2) regardless of the arguably privileged records, whether he is entitled to legal fees because the Board voluntarily produced some records after litigation began. The first issue is fully briefed in the context of the Board's motion, so denying Mr. Kramer's motion for untimeliness as to that matter would be an empty gesture. Denying his motion as to the request for fees would accomplish nothing other than to leave that issue to be decided even though it also has been fully briefed by the parties. Accordingly, while the Court

does not excuse Mr. Kramer's unexplained lateness, it will address the matters presented in his summary judgment motion.

## II.     Whether the Withheld Records are Privileged

Mr. Kramer sought from the Board all records in its possession that were generated "between January 1, 2020 and September 8, 2022 that relate to the question of the withdrawal of the town of Ripton from the Addison Central School District, the formation of the Ripton School District, the assignment of the Ripton School District to a supervisory union, the question of whether the Ripton School District should be designated a supervisory district, or the preparedness of the Ripton School District to operate as a supervisory district."  In response, the Board evidently provided access to a substantial volume of records.

It has withheld 143 records, however, which are documented in a *Vaughn* index that is in the record as Exhibit A to the parties' stipulated statement of undisputed facts. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).  According to the index, the withheld records appear to be Board communications with legal counsel, mostly Attorney Donna Russo-Savage.  The index also reflects that these records have been withheld as privileged under 1 V.S.A. § 317(c)(4).[1]

Mr. Kramer contends that these records have been withheld in error because: (1) to the extent that the lawyers who counseled the Board were employed by the Agency, rather than the Board, no attorney–client relationship ever could have arisen; and (2)

---

[1] To the extent that the Board now claims that at least some of the withheld records also may be exempt from the PRA as records relating to its deliberative processes, the parties have not briefed that issue in detail; and, given the Court's ruling below, it is unnecessary to address it in any event.

regardless whether any attorney–client relationship could have arisen, the undisputed facts show that none did.[2]  The former argument misapprehends the law; the latter misapprehends the facts.

### A.  Whether Attorney–Client Relationships Could Have Existed

Mr. Kramer's first argument is substantially as follows.  The Agency and the Board are separate entities with potentially disparate views.  Two of the attorneys with whom the Board consulted were employed by the Agency.  Those attorneys' roles within the Agency necessarily created a conflict of interest, at least during the relevant time, as to any representation provided by those attorneys to the Board.  An attorney–client relationship cannot arise, Plaintiff maintains, if the attorney has a conflict of interest.  Therefore, no attorney–client relationship could have arisen here.  Because there was no attorney–client relationship, there could be no communications protected by attorney–client privilege, Exemption 4 cannot apply, and the records should have been produced.  The Board disagrees with those contentions.

The parties devote substantial energy to debating whether there may have been any conflict of interest weighing on the representation of the Board by Agency attorneys.  The issue in this public records case, however, is simply whether the records were properly withheld as privileged.  Mr. Kramer's argument that they could not have been is predicated on a substantial mistake of law, which the Board does not clearly correct in briefing.  The privilege operates for the benefit of and must be invoked by or on behalf of

---

[2] To the extent that a small portion of the withheld records reflect Board representation by attorneys from the Office of the Attorney General, Plaintiff has not contested the Board's position that such documents are privileged.  The sole controversy between the parties is as to records relating to representation by attorneys employed by the Agency.

the *client*. The Late Paul R. Rice, *et al., Attorney-Client Privilege in the U.S.* §§ 2:3, 11:1. Neither party has come forward with any law to the effect that a client whose lawyer may have been wiser to exercise her professional judgment by avoiding representation due to a conflict of interest or to flag a perceived conflict and seek the clients' potential assent to representation notwithstanding the conflict, forfeits protection of the attorney–client privilege as to communications otherwise appropriately subject to it. There is no such law. *See, e.g., St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn*, 746 S.E.2d 98, 106 (Ga. 2013) (conflict of interest does not abrogate privilege); *Garvy v. Seyfarth Shaw LLP*, 966 N.E.2d 523, 538 (Ill. 2012) (violation of ethics rules "has no relevance to the issue of whether the documents in question are protected by the attorney-client privilege").

An attorney who fails to follow the rules as to conflicts of interest may be sued, may be professionally disciplined, or there may be other consequences, but the Court has found no law that would penalize the client after the fact by fully negating the privilege in the manner advocated by Mr. Kramer. *See Attorney-Client Privilege in the U.S.* §§ 2:3 ("The purpose of the privilege in the United States has always been to encourage people to seek legal advice freely and to communicate candidly with the attorney during those consultations." (footnote omitted)).

According to the Restatement:

A relationship of client and lawyer arises when:

> (1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either

>> (a) the lawyer manifests to the person consent to do so; or

(b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services; or

(2) a tribunal with power to do so appoints the lawyer to provide the services.

*Restatement (Third) of the Law Governing Lawyers* § 14; *see also Cody v. Cody*, 2005 VT 116, ¶¶ 19–20, 179 Vt. 90, 96 (discussing when relationship arises). Basically, the test depends on reasonable expectations in the circumstances. Nothing about it remotely implies that confidential communications with counsel stop being protected by the attorney–client privilege if it is later determined that a conflict of interest, whether disclosed or not, attended the representation.

The Court rejects Mr. Kramer's argument that some alleged conflict of interest automatically means that no attorney–client relationship could have existed between members of the Board and attorneys employed by the Agency and, thus, no privileged communications could have occurred.

B.     Whether, In Fact, No Attorney–Client Relationships Ever Existed

The question here turns whether the circumstances were such that neither the Board nor the Agency attorneys could have had any reasonable expectation that they had entered into an attorney–client relationship. As set forth below, the Board has submitted substantial evidence showing how attorneys, including Agency attorneys, come to represent the Board. Those submissions are largely uncontradicted and support reasonable beliefs by both the Board and counsel that such relationships existed vis-à-vis the withheld records. Mr. Kramer does argue, however, that this evidence is "immaterial;" and, at least with regard to Board representation by Attorney Russo-Savage, is directly contradicted by the Board president's and Attorney Russo-Savage's

own statements expressly disclaiming any such relationship. The Court will address those contentions in turn.

The undisputed facts show that the Board has never had any staff attorneys (or any staff at all) in its employ. When it needs formal legal advice, it confers with the Agency. A determination is made as to whether Board representation by an Agency attorney would present a conflict of interest. If not, an Agency attorney is made available to the Board. If there is a conflict, the Board will get counsel elsewhere, whether from the Attorney General's Office or an outside source. The withheld records involving communications with Agency attorneys arise out of attorney–client relationships that occurred only after that process was followed in the ordinary course by both the Board and the Agency in this case.

Mr. Kramer does not dispute the facts described above. He asserts, though, that they are immaterial based largely on his views that the operative questions are limited to whether there was a conflict of interest and that there, in fact, was such a conflict. *See generally* Plaintiff's Statement of Disputed Facts (Filed Oct. 6, 2023). But as the Court explained above, the mere existence of a conflict of interest, if there was one, does not demonstrate that there was no attorney–client relationship or that communications with counsel could not have been privileged. The process by which the Board comes to be represented by Agency attorneys, and the process followed in this case, is not immaterial for summary judgment purposes. It is important context evidence supporting the reasonableness of beliefs by Board Chair Oliver Olsen and Attorney Russo-Savage that there was an attorney–client relationship. *See* Declarations of Oliver Olsen and Donna Russo-Savage and Joint Statement of Facts ¶ 27 (filed June 12, 2023) ("It was Mr.

Olsen's understanding in 2021 and 2022 that communications between the Board and Ms. Russo-Savage were privileged.").

In any event, Mr. Kramer also argues that both Mr. Olsen and Attorney Russo-Savage expressly disclaimed any attorney–client relationship at relevant times. The parties have stipulated that, on one or two occasions, Mr. Olsen conversed directly with Attorney Mark Oettinger, who was representing the Town of Ripton in the Board proceeding; that Attorney Oettinger asked Mr. Olsen if "he" was represented; and that Mr. Olsen said no.[3] Mr. Kramer takes this as proof positive that Mr. Olsen in fact had no subjective belief that the Board had any attorney–client relationship with any Agency attorney. An insurmountable problem with this argument is that Mr. Kramer has stipulated that the opposite is the case. The stipulations include this:

24.     When Mr. Oettinger asked Mr. Olsen whether he was represented by counsel, Mr. Olsen understood Mr. Oettinger to be asking whether they could speak directly without a lawyer present. Mr. Olsen understood that whether he could speak directly with Mr. Oettinger without a lawyer present was a separate and distinct question from whether he could have privileged conversations with counsel without Mr. Oettinger present.

25.     Mr. Olsen did not understand Mr. Oettinger to be asking whether he had ever had any privileged conversations in the past that were potentially relevant to the matters he expected to discuss with Mr. Oettinger, or whether he might have any privileged conversations in the future that could be relevant to the matters he expected to discuss with Mr. Oettinger.

---

[3] Attorney Oettinger asserts in his declaration that, if he had known that the Board was represented by counsel, he would have considered it unethical to communicate directly with Mr. Olsen because doing so would have violated Rule 4.2 of the Vermont Rules of Professional Conduct. The Board argues that, in the context of the proceeding that was underway, such communications would not violate that rule. The dispute is beyond the scope of this case, and the Court declines to address its substance in detail. It suffices to note that many jurisdictions have found that Rule 4.2 permits communications from attorneys directly to public officials even if the officials are represented by counsel. *See Restatement (Third) of the Law Governing Lawyers* § 101, Reporter's Note cmt. b ("Most of the extant bar-association opinions take an intermediate position, permitting extensive contact.").

26. If Mr. Oettinger had asked Mr. Olsen to waive privilege over any past or future conversations with counsel outside the presence of Mr. Oettinger, Mr. Olsen would have said no.

27. It was Mr. Olsen's understanding in 2021 and 2022 that communications between the Board and Ms. Russo-Savage were privileged and confidential when those communications did not involve third parties or relate to issues involving potential conflicts between the interests of the Board and the Agency.

Joint Statement of Facts ¶¶ 24–27 (filed June 12, 2023).

That Attorney Oettinger may have interpreted his exchanges with Mr. Olsen differently is irrelevant for purposes of this case. The parties have stipulated that Mr. Olsen understood that there was an attorney–client relationship and that Board communications with counsel were privileged. Mr. Olsen, thus, did not disclaim an attorney–client relationship with Attorney Russo-Savage.

Mr. Kramer argues that Attorney Russo-Savage also disclaimed any such attorney–client relationship in an e-mail to a third party. The Board objects that the e-mail represents multiple levels of hearsay, is inadmissible for that reason, and cannot properly be relied upon during summary judgment proceedings. In response, Mr. Kramer has not attempted to show how the e-mail might be admissible. The e-mail plainly would be inadmissible hearsay to the extent that it makes an assertion of nonrepresentation and that is the fact for which it is being offered in support.[4] Evidence

---

[4] At oral argument, Mr. Kramer appeared to argue that the e-mail is not hearsay because it is not being offered for the truth of the matter asserted but simply to document what Ms. Russo-Savage said. This argument is not persuasive. Mr. Kramer is asserting that Ms. Russo-Savage essentially said that she did not represent the Board and that lack of representation is exactly what Mr. Kramer is attempting to use this communication to prove. He is offering an out-of-court statement to prove the truth of the matter claimed to be asserted, which is the definition of hearsay. Vt. R. Evid. 801.

considered in summary judgment proceedings must be admissible.  Vt. R. Civ. P. 56(c)(1), (2), (4); *see also Levarge v. Preston Bd. of Educ.*, 552 F. Supp. 2d 248, 251 n.3 (D. Conn. 2008) (unsworn correspondence not admissible evidence for purposes of summary judgment).  On that basis, the Court will not rely upon the e-mail.

Admissibility aside, the e-mail simply does not say what Mr. Kramer suggests it does.  In the e-mail, a third party who identifies herself as a candidate for a seat on the Board of the Addison Central School District poses some questions to Attorney Russo-Savage as to the Town of Ripton's proposed withdrawal from the School District, purportedly so that she could best inform her constituents.  Attorney Russo-Savage's response includes this:

> Although the Agency is happy to help in any way possible, it's important to note that we are only able to provide guidance – only a school district's attorney can provide it with legal advice.  In addition, the State Board of Education is a separate entity from the Agency (and I am not one of its members) and so we can only speculate as to what it may do.
>
> That said, responses to your questions are integrated below.  As is our practice, I've cc'd your superintendent in case others ask him similar questions.

E-mail from Donna Russo-Savage to Mary Heather Noble (dated Feb. 17, 2021).

Apart from generally answering the underlying questions, Attorney Russo-Savage's response asserts that: (1) by answering the questions, Attorney Russo-Savage is not purporting to give the school district legal advice, (2) only the school district's own lawyer can do that, (3) the State Board and the Agency are separate entities, (4) Attorney Russo-Savage is not a member of the State Board, and (5) cannot speak for it.  None of the response appears to be intended to address at all whether she then had, or ever had, an attorney–client relationship with the Board notwithstanding her Agency employment.

In sum, Mr. Olsen's statement to Attorney Oettinger and Ms. Russo-Savage's statement to Ms. Noble simply do not in any way indicate that the Board never had an attorney–client relationship with Attorney Russo-Savage.

Finally, to the extent that Mr. Kramer's argument may be that Attorney Russo-Savage's alleged conflict of interest was so flagrant and substantial, presumably demonstrating some extreme and obvious adversity of interests, that there is simply no way that either the Board or Attorney Russo-Savage could possibly have reasonably thought that there was any attorney–client relationship between them, the record does not support it. The closest the record comes to documenting a palpable conflict is described in the parties' stipulated facts as follows:

12. On May 19, 2021, the Board passed a motion conditionally approving the withdrawal and reconstitution of the Ripton school district. A copy of meeting minutes reflecting the motion is attached as Exhibit B. The Board also requested that the Secretary provide a recommendation to it regarding how supervisory union services should be provided to Ripton.

13. The Secretary thereafter told Ms. Russo-Savage what he intended to recommend and what facts supported the recommendation. At his direction, Ms. Russo-Savage drafted a memorandum for the Secretary's review. On August 24, 2021, the Secretary issued a public memorandum to the Board with his recommendations. Exhibit D. The Secretary concluded that "it is likely that [Ripton] would be too small a system to perform some . . . SU duties itself in an efficient and effective manner" due to its small size. *Id.* The Secretary ultimately recommended that the Board designate Ripton to be its own Supervisory District. *Id.*

14. On January 19, 2022, the Board voted on, and agreed to follow, the Secretary's recommendation.

Joint Statement of Facts (filed June 12, 2023).[5] Thus, to some extent, Attorney Russo-Savage appears to have been serving two masters in relation to the same subject matter at the same time, which is quite possibly in tension with the process described above that is used by the Board and the Agency to attempt to avoid conflicts of interest.[6]

Attorney Russo-Savage's representation of the Board and her work on the Secretary's memorandum is troubling at the least and certainly not a best practice. Whether it amounted to a technical conflict of interest the Court declines to say. Again, the question is not whether there was a conflict. The issue is whether the interests of lawyer and client were so obviously misaligned that they could not have had a reasonable belief that they had a lawyer–client relationship. Here, the record shows that such a relationship existed well before the memorandum, was ongoing, and was the product of a formal vetting process to ascertain whether a conflict existed. The record is insufficient to demonstrate that Attorney Russo-Savage's participation in drafting the Secretary's memorandum created such an obvious and flagrant conflict that any continuing belief by the Board in an attorney-client relationship would have been unreasonable.

The remaining proffered conflicts relied upon by Mr. Kramer are not articulated with great clarity. Mr. Kramer appears to assert that, although Ms. Russo-Savage was advising the Board in relation to a Board, not Agency, proceeding, the Agency had a

---

[5] The record is silent as to whether the Board knew in real time that Ms. Russo-Savage participated in drafting the memorandum and, if so, whether it cared. On its face, she is not identified as the author or a contributor.

[6] As far as the stipulated facts go, Ms. Russo-Savage's role with regard to the memorandum was spelling out the position expressly asserted by the Secretary of the Agency, not personally advocating that Agency position to the Board, as Mr. Kramer implies.

position on the matter that was in tension with the Town of Ripton's views. That alleged conflict, between Agency and Town interests, presumably should be attributed to Attorney Russo-Savage, demonstrating that she also had a conflict of interest with the Board. But the conclusion simply does not follow. Mr. Kramer does not explain why the Agency's alleged views presented any conflict between Attorney Russo-Savage and the Board, much less one so obvious and severe that both she and the Board could not reasonably have thought that they continued to share an attorney–client relationship. And the *Vaughn* index reflects that the Board consulted with Attorney Russo-Savage frequently during the relevant time. There is no dispute that, but for Mr. Kramer's argument about a conflict of interest, the Board's communications with counsel are appropriately subject to the privilege. Thus, if there was some conflict of interest, it plainly is not one that caused the Board and counsel to have any subjective awareness that their communications were not privileged, and the Court declines to conclude that their interests were so adverse that, objectively speaking, they could not have had a reasonable belief that they were in a lawyer–client relationship.

The Court concludes that the withheld materials are subject to attorney–client privilege and were properly withheld from production under Exemption 4.[7]

---

[7] The parties also spar over whether this case presents a circumstance where the Agency and the Town were adverse parties in a "quasi-judicial" proceeding. The Byzantine process for withdrawals set out in 16 V.S.A. § 724 and No. 176 (Adj. Sess.), § 4 has few of the hallmarks of a judicial process. *See Frawley v. Police Com'r of Cambridge*, 46 N.E.3d 504, 514 (Mass. 2016) ("[W]hen assessing whether a proceeding is quasi-judicial, 'we have looked to the form of the proceeding ... and the extent to which that proceeding resembles judicial action.'" (citation omitted)). No matter how the proceeding is characterized, however, the statute does not specifically designate the Agency a "party" to it; and there is no cogent explanation by Mr. Kramer as to how the Agency somehow was in the position of an adversary for purposes of that proceeding, or how any of this shows that the Board did not have a lawyer—client relationship with Attorney Russo-Savage.

### III. Plaintiff's Entitlement to Legal Fees

Mr. Kramer asserts in his cross-motion that, after he filed the complaint in this case, the Board produced some records that it had not produced earlier. He argues that he is entitled to his attorney fees in this case as to those records under 1 V.S.A. § 319(c)(1), regardless of the principal dispute above, which has now been resolved in the Board's favor. Mr. Kramer's motion is not supported by a statement of undisputed facts or any evidence describing the Board's voluntary post-complaint production. The record is silent as to the nature of the documents produced or their volume. Accordingly, Mr. Kramer's argument presumably is that § 319(c)(1) requires some assessment of attorney fees anytime there is any production of records after litigation begins.

Mr. Kramer's argument is untenable. The Vermont Supreme Court has been crystal clear that attorney fees awards depending on who substantially prevailed must look to the entire case rather than who prevailed on isolated issues or claims. *See In J & K Tile Co. v. Wright & Morrissey, Inc.,* 2019 VT 78, ¶ 37, 211 Vt. 179, 194 ("The court should have determined who was the substantially prevailing party as a whole, considering all the claims together."). It has further made clear that fee awards under the PRA are no different. *See Energy Pol'y Advocs. v. Att'y Gen.'s Off.,* 2023 VT 43, ¶ 21 ("The canons of statutory interpretation further support this, because to allow such a parsing of claims would essentially mandate the award of attorney's fees for any legal victory, no matter how small. This is an absurd result which we will not sanction.").

Here, Mr. Kramer's complaint focuses exclusively on the 144[8] documents that were withheld under a claim of attorney–client privilege and listed in the *Vaughn* index. The parties have engaged in significant briefing disputing whether such documents were rightfully withheld based on the asserted claim of privilege. If there are other documents that have been produced or discovered, those do not appear to be referenced as part of the current version of the complaint. Nor has Plaintiff described them in any detail in his motion.

Subsection 319(c)(1) provides for attorney fees when "the complainant has substantially prevailed." Plaintiff bears the burden of establishing that status. *See Burlington Free Press v. Univ. of Vermont*, 172 Vt. 303, 305–06, 779 (2001). In this instance, the dispute relating to the documents described in the *Vaughn* index is the only contest raised in the complaint and litigated by the parties. It has been resolved in the Board's favor. See *Jeremiah Beach Parker Restoration and Const. Management Corp.*, 2010 VT 55, ¶ 8, 188 Vt. 583, 585 (noting court can consider which party prevailed "on the issues actually litigated"). Mr. Kramer is not the substantially prevailing party.[9]

---

[8] The number is sometimes referred to as 143 in the materials.

[9] Given that determination, the Court need not weigh in on the Board's legal contention that attorney's fees may not be awarded under the PRA in the absence of a judicial order of production.

Conclusion

For the foregoing reasons, Mr. Kramer's motion for summary judgment is denied. The Board's motion is granted.

Electronically signed on Friday, February 2, 2024, per V.R.E.F. 9(d).

_____
Timothy B. Tomasi
Superior Court Judge